UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18CV-P26-TBR

KAREEM M. EDWARDS                                                              PLAINTIFF

v.

JAMES BEAVERS *et al.*                                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Kareem M. Edwards filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court upon initial review of the amended complaint pursuant to 28 U.S.C. § 1915A.[1] For the reasons stated below, the Court will dismiss some of Plaintiff's claims and allow other claims to proceed for further development.

## I. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff is a convicted inmate at the Kentucky State Penitentiary (KSP). He names the following KSP personnel as Defendants: James Beavers, identified as an "IA Supervisor"; Melvin O'Dell and Brendan Inglish, identified as sergeants; Jess Coombs and Anthony Hale, identified as lieutenants; Darren Larue, Michael Alexander, Nathaniel Deboe, Charles Conner, and Perry Sanders, identified as corrections officers; and Brian Neely, identified as "Internal Affairs/Correctional Officer."[2] He sues each Defendant in his official and individual capacities.

Plaintiff states that on June 29, 2017, while he was walking to the yard office, he witnessed a commotion and saw KSP officers beating up inmates. He states, "As I turned to

---

[1] By prior Memorandum and Order (DN 42), the Court ordered Plaintiff to file an amended complaint on the Court-approved § 1983 form. The Court directed Plaintiff to include all claims and Defendants he wished to assert in this action because the complaint filed on the Court-approved form would supersede the original complaint, the motions to amend and supplement, and any other filings asserting new claims Plaintiff had filed previously in this action.

[2] Plaintiff does not list Defendants Larue, Alexander, Deboe, Conner, Sanders, and Neely in the complaint form but indicates in the form that he ran out of room to list them, names them as Defendants in the body of his complaint, and tenders summons forms for each of them. Construing the complaint broadly, the Court construes the complaint as naming these six officers as Defendants.

leave the area, Sgt. Melvin O'Dell and Lt. Anthony Hale were running towards me screaming, cursing, and calling me racial slurs. I panicked out of fear." Plaintiff continues as follows:

> I then was attacked and beaten the ground with vicious violent blows. I was maced, then slammed face first onto concrete while in restraints. In the process of being escorted to 3ch/unit to segregation, "Sgt. O'Dell and Lt. Hale" continued to deliver their violent assault on me. Rec. Aide c/o Tucker instructed both staff to remove themselves from the situation, "there is no need to continue beating Edwards, this type is not forcefully needed, he is already restrained and calm."

Plaintiff further asserts that he was repeatedly "punched in the face/head with close fists, rammed into concrete, steel bars, and walls." He reports that non-Defendant Corrections Officer Tucker instructed O'Dell to stop a second time. He states, "However, Sgt. O'Dell continued on his hostile rampage screaming obscenities to all wall stands, towers to 'shoot and kill, get your live rounds out, and start shooting.'"

Plaintiff states that once he was in front of the segregation unit, Defendant Deboe slammed him to the ground even though he was in full restraints. Plaintiff asserts, "He proceeded to kick, punch, and knee me in the back, and head, until I started bleeding from the nose and mouth, causing me to cough up blood. He told me I better not get any blood on him or he would kill me." Plaintiff reports that he was placed in the "'stripe cage'" and that when he exited in full restraints he was "attacked and beaten" by Defendants Deboe, Alexander, Neely, Larue, Coombs, and Inglish. He goes on to state as follows:

> I was kicked, punched, slammed, face/head rammed into steel, concrete, then tased repeatedly with several taser devices. I lost consciousness a few times, collapsed to the floor, where staff had to pick me up to my feet. Lt. Coombs continually tased again, and again. C/o Charles Conner and Perry Sanders included.

Plaintiff reports that he was then escorted to a segregation unit shower stall "where the above stated defendants continued to beat and torture me." He states that Defendants Coombs and Inglish "observed" while Defendants Deboe, Larue, Alexander, Conner, Sanders, and Neely

"started smashing, twisting, and contorting my arms, elbows, wrist, feet, ankles, fingers, neck, as they continued to try and break my nose and back violently with malicious intent." Plaintiff asserts that, after he was placed in a restraint chair for several hours, "the tortured acts continued with the stated officers ramming my face/head into the metal shower stall." He states, "I was forcibly held under running water" by Defendants Alexander, Neely, Larue, Conner, and Sanders, "as [Defendant] Deboe deployed shock after shock after shock, with the electronic shield device. I lost consciousness again from the continuous shocking and trauma, then lost control of my bile movements. The above smashing, twisting, and contorting my extremities would not stop, as my face/head bled."

Plaintiff asserts that he was then placed back into the restraint chair and Defendant Alexander "started re-shocking me with the shield device while I was sitting in the chair. I just sat there strapped/cuffed/shackled, as they/(he) administered this shock for minutes at a time in shock." He states, "Nurse Karen Sue Smith came in to take vital signs, but was so disgusted that she said 'I know you all did not just run water on him, then electrocute him, why is he all wet.' She then instructed staff to losen the metal cuffs, shackles and strapped contraption, so that I could have circulation."

Plaintiff further maintains that he filed grievances but that Defendant Beavers "issued disciplinary infractions, as a recourse of action (chilling effect) to deter my efforts in accessing the courts." He continues, "However, after a lengthy and thorough investigation 'headed by James Beavers, it was found that most allegation(s) I stated in my July 24, 2017, letter/redress were found to be true, after interviewing several staff witnesses.' The infraction(s) were given in retaliation and bad faith."

Plaintiff alleges that Defendant Beavers violated his rights under the First, Eighth, and Fourteenth Amendments by "denying me access to the courts for redress/grievance, subjecting me to cruel & unusual punishment, by issuing several bogus disciplinary infractions in retaliation for a redress/grievance to the Commissioner/Ombudsman's Office in which punishments I had to serve." He continues, "This defendant failed to protect me under equal protection of law, as a sworn official. He has made threats to my life/safety."

Plaintiff alleges that the other ten Defendants violated his Eighth and Fourteenth Amendment rights by using excessive force against him and/or by failing to protect him.

As relief, Plaintiff requests compensatory and punitive damages and injunctive relief.

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as

true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

**A. Official-capacity claims**

Plaintiff sues all Defendants in their official capacities. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Defendants are employees of KSP and are

therefore state employees. Claims brought against state employees in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, the Eleventh Amendment acts as a bar to claims for monetary damages against state employees or officers sued in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Therefore, Plaintiff's official-capacity claims against Defendants for monetary damages must be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from Defendants who are immune from such relief.

**B. Individual-capacity claims**

    **1. Fourteenth Amendment**

Plaintiff alleges violations of his rights under the Fourteenth Amendment. To the extent that he is alleging claims of excessive force or failure to protect under the Fourteenth Amendment, the claims must be dismissed. It is the Eighth Amendment, rather than the Fourteenth Amendment, which is the source of protection for convicted prisoners complaining of excessive force or failure to protect. *See Estelle v. Gamble*, 429 U.S. 97 (1976). Because Plaintiff was a convicted state inmate at the time of the facts alleged in the complaint, the Fourteenth Amendment claims fail.

Plaintiff also makes reference to equal protection. The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To prove a violation of the Equal Protection Clause, a plaintiff must allege an invidious discriminatory purpose or intent. *Washington v. Davis*, 426 U.S. 229 (1976);

*Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. at 279. Plaintiff fails to identify his race or any other characteristic that would implicate an equal protection violation. Nor does Plaintiff allege an invidious, discriminatory intent on the part of Defendants to violate his constitutional rights because of his membership in a protected class. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. at 279.

Accordingly, Plaintiff's Fourteenth Amendment claims must be dismissed for failure to state a claim upon which relief may be granted.

### 2. Verbal abuse and threats

Plaintiff alleges that he was subjected to racial slurs and that Defendant Beavers made "threats to my life/safety." The Eighth Amendment proscribes punishments which involve the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). However, harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, No. 3:07-0361, 2008 U.S. Dist. LEXIS 118217, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.").

Accordingly, Plaintiff's claims of racial slurs and threatening or abusive language by Defendants will be dismissed for failure to state a claim upon which relief may be granted.

### 3. Access to courts

Plaintiff also alleges that Defendant Beavers denied him access to the courts. Prisoners have a constitutional right of access to the courts under the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, in order to state a claim for interference with access to the courts, a plaintiff must show actual injury. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (per curiam). "An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary." *Lewis v. Casey*, 518 U.S. at 351. Plaintiff fails to allege what actual injury or prejudice to a pending legal action that he suffered.

Accordingly, Plaintiff's claim that he was denied access to the courts will be dismissed for failure to state a claim upon which relief may be granted.

### 4. Grievance handling

To the extent that Plaintiff is alleging a claim against Defendant Beavers based on the handling of his grievances, his claim also fails. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his or her grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant

8

denied an administrative grievance or failed to act based upon information contained in a grievance."); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation.").

Therefore, Plaintiff's claims concerning the handling of his grievances will be dismissed for failure to state a claim upon which relief may be granted.

   5. **Retaliation**

Plaintiff alleges that Defendant Beavers retaliated against him for filing grievances and other means of redress concerning the June 29, 2017, incident by issuing false disciplinary reports against him. <u>Upon review, the Court will allow a retaliation claim under the First Amendment to proceed against Defendant Beavers in his individual capacity for monetary damages and injunctive relief and in his official capacity for injunctive relief only.</u>

   6. **Excessive force and failure to protect**

Finally, Plaintiff alleges excessive force and/or failure to protect claims against Defendants O'Dell, Inglish, Coombs, Hale, Larue, Alexander, Deboe, Conner, Sanders, and Neely. <u>Upon review, the Court will allow Plaintiff's claims of excessive force and/or failure to protect under the Eighth Amendment to proceed against these Defendants in their individual capacities for monetary damages and injunctive relief and in their official capacities for injunctive relief only.</u>

However, to the extent Plaintiff alleges that Defendant Beaver also subjected him to cruel and unusual punishment or failed to protect him, the claim fails. To state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which he complains. *See Rizzo v. Goode*, 423 U.S. 362, 375-76

(1976). Nothing in the complaint suggests that Defendant Beavers was involved or even present when the alleged excessive force occurred. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Beavers for failure to state a claim upon which relief may be granted.

### IV. ORDER

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that all official-capacity claims for monetary damages are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and/or for seeking relief from a defendant who is immune from such relief.

**IT IS FURTHER ORDERED** that Plaintiff's claims under the Fourteenth Amendment, claims alleging verbal abuse and threats, claims alleging denial of access to courts, and claims concerning grievance handling are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's claim under the Eighth Amendment against Defendant Beavers only is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court will enter a separate Order Regarding Service and Scheduling Order to govern the claims that have been permitted to proceed. In allowing the claims to proceed, the Court passes no judgment on their outcome or ultimate merit.

Date: July 11, 2018

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

cc: Plaintiff, *pro se*
     Defendants
     General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.010